FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 31, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

RICHARD B.,[1]

           Plaintiff,

vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

           Defendant.

No. 4:18-cv-05168-MKD

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 14, 17

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 17. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 14, and denies Defendant's Motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 25, 2012, Plaintiff protectively filed applications for Title II

disability insurance benefits and Title XVI supplemental security income benefits,

alleging a disability onset date of December 28, 2011. Tr. 191-202. The

applications were denied initially, Tr. 139-46, and on reconsideration, Tr. 148-52.

Plaintiff appeared at a hearing before an administrative law judge on October 29,

2014. Tr. 36-85. On December 22, 2014, the ALJ denied Plaintiff's claims. Tr.

16-35. On appeal, this Court remanded the case to the Social Security

ORDER - 6

Administration and instructed it to supplement the record with any outstanding evidence, and take testimony from psychological, medical, and vocational experts, reassess whether Plaintiff met Listing 12.05C, reassess Plaintiff's symptom reports, reweigh the medical opinions in the file, and form a new RFC determination considering the new evidence in the record, reassess. Tr. 753-71.

On June 22, 2018, Plaintiff appeared before an ALJ for a second hearing. Tr. 660-719. On August 16, 2018, the ALJ denied Plaintiff's claims. Tr. 628-59. At step one, the ALJ found Plaintiff had engaged in substantial gainful activity from November 2015 to January 2017, but that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. Tr. 634. At step two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, intermittent explosive disorder, unspecified personality disorder, and polysubstance use disorder. Tr. 634. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 637. The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following limitations:

> [Plaintiff] would be limited to simple, routine, and repetitive tasks requiring a reasoning level of 2 or less; he would need "hands-on" demonstration to learn tasks; he would need to work in a single location with no assembly-line pace or other fast-paced work; he should have no contact with the public or

more than occasional, superficial contact with co-workers or supervisors, except that he would require up to frequent supervision during the normal training period to help him learn new tasks; and he would need to work independently without collaborative tasks.

Tr. 643.

At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a hand packager. Tr. 650. Although the ALJ found Plaintiff capable of performing past relevant work, the ALJ continued to step five and determined that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as industrial cleaner, kitchen helper, and laundry worker II. Tr. 650-51. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from December 28, 2011, the alleged onset date, through the date of the ALJ's decision. Tr. 651-52.

The Appeals Council did not assume jurisdiction of the case, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 404.984, 416.1484.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability income benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's substantial gainful activity at step one;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ properly assessed Listing 12.05 at step three;

4. Whether the ALJ properly considered Plaintiff's symptom claims;

5. Whether the ALJ properly considered lay witness statements; and

6. Whether the ALJ properly formulated the RFC.

ECF No. 14 at 2.

## DISCUSSION

### A.    Substantial Gainful Activity

Plaintiff claims the ALJ erred at step one by improperly considering his work as a security guard as substantial gainful activity. ECF No. 14 at 3-5. Plaintiff worked as a security guard at Moon Security from November 2015 to May 2016 and at Securitas from May 2016 to January 2017. Tr. 693-95. Plaintiff argues that the ALJ erred by relying on Plaintiff's testimony, rather than his earnings record, in finding that this work activity constituted substantial gainful

activity.  ECF No. 14 at 4.  Plaintiff also argues that these jobs were unsuccessful

work attempts (UWAs).  ECF No. 14 at 4-5.

   *1. Unsuccessful Work Attempt*

   At step one of the sequential evaluation process, the ALJ considers the

claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the

claimant is engaged in "substantial gainful activity," the ALJ must find that the

claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).  Substantial

gainful activity is work activity that "involves doing significant physical or mental

activities" on a full-or part-time basis, and "is the kind of work usually done for

pay or profit."  20 C.F.R. §§ 404.1572, 416.972.  In some instances, short-term

work may be considered an unsuccessful work attempt instead of substantial

gainful activity.  *See Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th

Cir. 1999).  The concept was designed as an equitable means of disregarding work

that does not demonstrate sustained substantial gainful employment.  *Id*.; *see also*

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including

this one, have recognized that disability claimants should not be penalized for

attempting to lead normal lives in the face of their limitations.").

   A UWA is defined by regulation as "work that [the claimant is] forced to

stop or to reduce below the substantial gainful activity level after a short time

because of [his] impairment."  20 C.F.R. § 404.1574(a)(1) (eff. Nov. 15, 2016); 20

ORDER - 10

C.F.R. § 416.974(a)(1); *see also* Social Security Ruling (SSR) 84–25; SSR 05-02. Under the regulations in effect at the time of the ALJ's decision, the requirements to qualify for the UWA exclusion were: (1) the claimant must have a significant break in the continuity of his or her work before the work attempt; and (2) the work must end or be reduced below the substantial gainful activity earnings level within six months because of the impairment or because of the removal of special conditions which took into account the impairment. 20 C.F.R. §§ 404.1574(c), 416.974(c).

Here, the ALJ concluded that Plaintiff's two jobs with Moon Security and Securitas were not UWAs, but rather, constituted substantial gainful activity during the relevant period. Tr. 634. Plaintiff argues the ALJ erred by basing the finding of SGA on presumptions of Plaintiff's income, rather than his earnings record. ECF No. 14 at 4. The SSA regulations state, "[W]e will generally consider other information in addition to [the claimant's] earnings if there is evidence indicating that [the claimant] may be engaging in substantial gainful activity…" 20 C.F.R. §§ 404.1574(b)(3)(ii); 416.974(b)(3)(ii). Plaintiff asserts that the earnings record shows his SGA-level work lasted for six months, which, along with the work ending due to his impairments, would qualify as UWAs. ECF No. 14 at 4 (citing Tr. 1417). The ALJ acknowledged that he considered Plaintiff's earnings record in evidence which showed Plaintiff's reported income only exceeded SGA-level

amounts in the third and fourth quarters of 2016. Tr. 634 (citing Tr. 928-30).

However, the ALJ stated that he relied on Plaintiff's testimony that he worked full-time between November 2015 and January 2017 with only a weeklong break, and that he earned $9.50 per hour working full-time at Moon Security and $10.50 per hour working full-time at Securitas. Tr. 634, 693-96. The ALJ determined that, based on Plaintiff's testimony, he worked above SGA-levels for more than one year. Tr. 634. Substantial evidence supports the ALJ's conclusion that Plaintiff's work between November 2015 and January 2017 constituted substantial gainful activity.

### 2. Trial Work Period

Plaintiff asserts that even if his work activity constituted SGA, it was done under a trial work period. ECF No. 14 at 4 (citing 20 C.F.R. § 404.1592(a)). An individual who is entitled to disability insurance benefits is entitled to a trial work period. 20 C.F.R. § 404.1592(d). "The trial work period is a period during which [a claimant] may test [their] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). The trial work period may last up to nine months. *Id.* The Commissioner may not consider work performed during the trial work period in determining whether disability has ended. *Id.* The trial work period begins with the month in which a claimant becomes entitled to benefits. 20 C.F.R. § 404.1592(e).

The question of whether an individual is entitled to a trial work period before the Commissioner has adjudged the individual to be entitled to benefits has not been addressed by the Ninth Circuit. However, several other circuits have concluded that the trial work period is only available to claimants who have already been adjudicated disabled and are receiving benefits at the time of the trial work period. *See Cieutat v. Bowen*, 824 F.2d 348, 358-59 (5th Cir. 1987); *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988)[3]; *Wyatt v. Barnhart*, 349 F.3d 983, 985-96 (7th Cir. 2003); *see also Conley v. Bowen*, 859 F.2d 261, 262 (2d Cir. 1988). This interpretation is consistent with the regulation itself, which excludes the trial work period from the consideration of whether a disability has ended, rather than the initial consideration of whether a claimant is disabled. 20 C.F.R. § 404.1592(a). Furthermore, the regulation that establishes the trial work period is contained within the subheading "Continuing or Stopping Disability." 20 C.F.R. §404, Subpart P. In light of the text and context of the regulation, the Court finds Plaintiff is eligible for a trial work period only after becoming entitled to benefits by being adjudged disabled within the meaning of the Social Security Act. Here, because Plaintiff was not adjudged disabled and thus was not entitled to benefits at

---

[3] *But see Parish v. Califano*, 42 F.2d 188, 193 (6th Cir. 1981) (recognizing trial work period eligibility upon filing for benefits in cases of degenerative disease).

the time of his employment as a security guard for both Moon Security and

Securitas, Plaintiff is unable to characterize his employment as a trial work period.

## B.     Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Lynn M.

Orr, Ph.D., James Opara, M.D., Chad Longaker M.Ed., Laurie Zimmerman, M.D.,

and N.K. Marks, Ph.D.  ECF No. 14 at 12-21.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's opinion, and an examining physician's opinion carries more weight

than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations

give more weight to opinions that are explained than to those that are not, and to

the opinions of specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ

may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[4] However, an ALJ is required to consider evidence from non-acceptable medical sources. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. §§

---

[4] For cases filed prior to March 27, 2017, the definition of an acceptable medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, are located at 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

404.1513(d), 416.913(d) (2013). "Other sources" include nurse practitioners,

physicians' assistants, therapists, teachers, social workers, spouses and other non-

medical sources. 20 C.F.R. § 20 C.F.R. § 416.913(d) (2013). An ALJ may reject

the opinion of a non-acceptable medical source by giving reasons germane to the

opinion. *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Orr

On November 20, 2012, Lynn M. Orr, Ph.D., clinical psychologist,

conducted a psychological evaluation of Plaintiff. Tr. 372. Plaintiff reported to

Dr. Orr that he was unable to work due to back pain resulting from an accident and

some difficulty with his right eye following cataract surgery. Tr. 372. Dr. Orr

noted Plaintiff had no counseling other than treatment for chemical dependency, he

denied having ever been hospitalized for emotional problems, and he denied any

serious incidents of anxiety or depression. Tr. 372-73. Dr. Orr reported there was

no indication that Plaintiff experienced psychotic symptoms or suicidal or

homicidal thoughts, although he did note that Plaintiff reported he was suicidal

when he and his fiancé broke up in February 2012. Tr. 372-73. Dr. Orr indicated

that Plaintiff described his mood as "[g]ood, always relaxed, always happy." Tr.

373. Plaintiff's clinical exam and testing showed low average processing speed

and working memory, and borderline verbal comprehension and perceptual

reasoning. Tr. 375. Testing showed Plaintiff had a verbal IQ of 70 and a full-scale

IQ of 73, though his working memory and processing speed scores were considerably higher at 89 and 81. Tr. 375. Dr. Orr diagnosed cannabis and amphetamine dependence in remission, alcohol dependence in partial remission, intermittent explosive disorder, and borderline intellectual functioning. Tr. 375. Dr. Orr opined that Plaintiff would need to do "simple redundant tasks" with "instructions and other information repeated." Tr. 376. He opined that Plaintiff would have a slow learning curve and should "not be placed in a position where quick judgments are necessary to avoid safety hazards." Tr. 376. The ALJ found that Dr. Orr's "opinion support[ed] a restriction to frequent supervision during the training period and a need for 25 percent more time than the average worker to adapt to changes in the work environment." Tr. 645.

The ALJ gave great weight to Dr. Orr's opinion that Plaintiff needed 25 percent more time than the average worker to adapt to changes in the work environment. Tr. 645. Because Dr. Orr's assessment regarding Plaintiff's need for 25 percent more time was contradicted by the nonexamining opinion of Michael Lace, Ph.D., Tr. 681-82, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Orr's opinion as to this limitation.[5] *Bayliss*, 427 F.3d

---

[5] Dr. Lace testified that Plaintiff would be able to function without extra supervision to learn new tasks, but that Plaintiff would "do better with a little bit of

ORDER - 17

at 1216.  Instead, the ALJ fully credited Dr. Orr's medical opinion as to Plaintiff's

limitations, including this specific limitation.  Tr. 645.

However, in fashioning the RFC, the ALJ did not include a limitation

addressing Plaintiff's need for 25 percent more time than the average worker to

adapt to changes in the work environment.  Tr. 643, 645.  The ALJ is required to

set forth the reasoning behind his or her decisions in a way that allows for

meaningful review.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015)

(finding a clear statement of the agency's reasoning is necessary because the Court

can affirm the ALJ's decision to deny benefits only on the grounds invoked by the

ALJ).  "Although the ALJ's analysis need not be extensive, the ALJ must provide

some reasoning in order for us to meaningfully determine whether the ALJ's

conclusions were supported by substantial evidence."  *Treichler v. Comm'r of Soc.

Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).  Plaintiff argues that the record

does not support the ALJ's RFC, as Dr. Orr's opinion about Plaintiff's need for

additional time to adapt to changes in the work environment was repeated in other

locations in the record.  ECF No. 19 at 8; *see, e.g.,* Tr. 1328 (Dr. Marks found

---

extra time and a little bit of extra supervision."  Tr. 681-82.  Dr. Lace also testified

that, in terms of how Plaintiff presented, there was no support for marked or

extreme limitations.  Tr. 671.

ORDER - 18

marked impairments in relevant work functions); Tr. 681-82 (Dr. Lace agreed with Dr. Orr that Plaintiff would benefit from "overlearning" opportunities with extra time and supervision). Defendant argues that the ALJ relied on Dr. Orr's opinion in restricting Plaintiff to "simple, routine and repetitive tasks requiring a reasoning level of [two] or less," and that the ALJ found Dr. Orr assessed no additional limitations. ECF No. 17 at 9 (citing Tr. 638, 645). Defendant's argument is not persuasive. Limiting Plaintiff to simple, routine and repetitive tasks requiring a reasoning level of two or less does not address Plaintiff's need for 25 percent more time than the average worker to adapt to changes in the work environment. In the decision, the ALJ indicated that he relied on Dr. Orr's opinion in part in finding Plaintiff would be limited to simple, routine, and repetitive tasks requiring a reasoning level of two or less, and he also separately found that Dr. Orr's opinion supported a need for 25 percent more time than the average worker to adapt to changes in the work environment. Tr. 645. The ALJ's rationale for formulating Plaintiff's RFC without addressing a need for 25 percent more time for Plaintiff to adapt is absent, and therefore unsupported in this case. The Court finds that the ALJ committed reversible error by failing to include this credited limitation in the RFC.

This error is not harmless. The harmless error analysis may be applied where even a treating source's opinion is disregarded without comment. *Marsh v.*

*Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). An error is harmful unless the

reviewing court "can confidently conclude that no reasonable ALJ, when fully

crediting the [evidence], could have reached a different disability determination."

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). The ALJ

posed a hypothetical question to the vocational expert which included Dr. Orr's

limitation that Plaintiff would need 25 percent more time than the average worker

to adapt to changes in the work environment. Tr. 710-13. The vocational expert

testified that such a limitation would preclude competitive employment. Tr. 711-

12. The vocational expert confirmed her testimony was consistent with the

Dictionary of Occupational Titles (DOT), and her professional experience and

understanding of how jobs were performed per the DOT description formed the

basis for her testimony on issues in the ALJ's hypotheticals that were not

specifically addressed in the DOT. Tr. 715. Based on this record, the Court cannot

confidently conclude that the disability determination would remain the same were

the RFC to properly incorporate the entirety of Dr. Orr's fully credited opinion.

### 2. Dr. Opara

On November 17, 2012, James Opara, M.D., conducted a physical

examination of Plaintiff. Tr. 365-68. He diagnosed dorsolumbar strain and

cataract issues and did not assess Plaintiff with any physical limitations. Tr. 368.

On October 12, 2013, Plaintiff had another physical examination with Dr. Opara.

Tr. 389-92.  Dr. Opara observed tenderness and limited motion of Plaintiff's lumbar spine, but his examination otherwise showed results similar to the November 2012 examination.  Tr. 391.  Dr. Opara diagnosed Plaintiff with a lumbar strain and opined that he could lift up to 50 pounds frequently and 100 pounds occasionally, stand and/or walk for six hours in an eight-hour day using the remainder of the time to rest and change positions, and frequently stoop, crouch, and crawl.[6]  Tr. 391.

The ALJ gave great weight to Dr. Opara's opinion.  Tr. 635-36.  Because Dr. Opara's assessment regarding Plaintiff's physical restrictions was contradicted by the nonexamining opinion of James McKenna, M.D., Tr. 684-93, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Opara's opinion as to Plaintiff's physical limitations.[7]  *Bayliss*, 427 F.3d at 1216.  Instead, the ALJ fully credited Dr. Opara's medical opinion as to Plaintiff's limitations.

---

[6] The ALJ found that Dr. Opara limited Plaintiff to standing and/or walking for six hours with position changes every two hours.  Tr. 635.  Rather, Dr. Opara limited Plaintiff to standing and/or walking for six hours in an eight-hour day and noted that Plaintiff "will use the rest of the time to rest and to change positions."  Tr. 391.

[7] Dr. McKenna testified as to Plaintiff's physical impairments and did not assign any functional limitations.  Tr. 684-93.

ORDER - 21

However, in fashioning the RFC, the ALJ did not include any physical limitations. Tr. 643. The ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter*, 806 F.3d at 492 (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1103. Plaintiff contends that Dr. Opara limited Plaintiff to a medium RFC. ECF No. 19 at 6. Defendant asserts that although the ALJ gave Dr. Opara's opinion great weight, the ALJ also found that Plaintiff's treating physicians and Plaintiff's own testimony showed that his back impairment did not cause more than minimal limitation. ECF No. 17 at 11 (citing Tr. 636). However, the ALJ explained that he assigned Dr. Opara's opinion great weight because he "provided the most thorough physical examination in the record, his opinion [was] consistent with his examination findings and the longitudinal record, and he [had] Social Security program knowledge." Tr. 636. The ALJ's rationale for formulating an RFC without addressing any of Dr. Opara's opined exertional limitations is absent, and therefore unsupported in this case. The Court finds that the ALJ erred by failing to include these credited limitations in the RFC.

This error is not harmless. The harmless error analysis may be applied where even a treating source's opinion is disregarded without comment. *Marsh*, 792 F.3d at 1173. An error is harmful unless the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Here, Dr. Opara, examining physician, opined that Plaintiff had a physical limitation that restricted him to lifting up to 50 pounds frequently and 100 pounds occasionally, standing and/or walking for six hours in an eight-hour day with the remainder of the time to rest and change positions, and frequently stooping, crouching, and crawling. Tr. 391. The ALJ did not pose any hypotheticals to the vocational expert that included Dr. Opara's opined limitations on standing and/or walking for six hours in an eight-hour day with the remainder of the time to rest and change positions. In response to a hypothetical with no exertional limitations, the vocational expert testified that Plaintiff could perform his past relevant work as a hand packager, as well as other jobs existing in the national economy such as industrial cleaner, kitchen helper, and laundry worker II. Tr. 713. Although these are medium exertion level jobs, the DOT listings for these jobs do not specify any standing and/or walking requirements. *See DOT* (4th ed. 1991) (hand packager, 920.587-018, *available at* 1991 WL 687916; industrial cleaner, 381.687-018, *available at* 1991 WL 673258; kitchen helper, 318.687-010, *available at* 1991 WL

ORDER - 23

672755; laundry worker II, 361.685-018, *available at* 1991 WL 672987).  In

response to a hypothetical with a limitation to light exertion level work, the

vocational expert testified that Plaintiff could perform other jobs existing in the

national economy such as bakery worker (conveyor line), cleaner (housekeeping),

and marker II.  Tr. 714.  Although these are light exertion level jobs, the DOT

listings for these jobs do not specify any standing and/or walking requirements.

*See DOT* (4th ed. 1991) (bakery worker, 524.687-022, *available at* 1991 WL

674401; cleaner, housekeeping, 323.687-014, *available at* 1991 WL 672783;

marker II, 209.587-034, *available at* 1991 WL 671802).  Based on this record, the

Court cannot confidently conclude that the disability determination would remain

the same were the RFC to properly incorporate the entirety of Dr. Opara's fully

credited opinion.

### 3.  Mr. Longaker

On July 17, 2014, treating therapist Chad Longaker M.Ed. completed a

mental source statement for Plaintiff.  Tr. 514-16.  Mr. Longaker opined that

Plaintiff 1) was severely limited in the ability to work in coordination with or

proximity to others without being distracted by them, complete a normal workday

and workweek without interruptions from psychologically based symptoms,

perform at a consistent pace without an unreasonable number and length of rest

periods, interact appropriately with the general public, accept instructions and

respond appropriately to criticism from supervisors, get along with coworkers or

peers without distracting them or exhibiting behavioral extremes, and maintain

socially appropriate behavior and adhere to basic standards of neatness and

cleanliness; and 2) was markedly limited in the ability to maintain attention and

concentration for extended periods, and to respond appropriately to changes in the

work setting. Tr. 514-15. Mr. Longaker opined Plaintiff would likely be off task

up to 30 percent of the work week and would miss three days of work per month.

Tr. 516. The ALJ gave Mr. Longaker's opinion little weight. Tr. 646. Because

Mr. Longaker was an "other source," the ALJ was required to provide germane

reasons to discount his opinion.[8] *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

1993).

a.     "Other Source" Opinion

In discrediting his opinion, the ALJ noted that Mr. Longaker was not an

acceptable medical source. Tr. 646. An ALJ must consider the testimony of lay

witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053.

Lay witness testimony cannot establish the existence of medically determinable

---

[8] As a therapist, Mr. Longaker is considered an "other source" under 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2013).

impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919). The fact that Mr. Longaker was an "other source" was not a germane reason to reject his opinion.

Plaintiff asserts that Mr. Longaker was part of a treatment team at Tri-Cities Community Health and therefore, his opinion should be considered as an acceptable medical source opinion. ECF No. 14 at 17. However, *Gomez v. Chater* is no longer good law regarding whether the opinion of an "other source," who is part of an interdisciplinary team, is to be given controlling weight. *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996). Instead, because the Social Security regulations do not provide for the opinion of an "other source" to be given controlling weight even if the other source is supervised by a physician or acts as part of an interdisciplinary team, Mr. Longaker's opinion is still considered an "other source" opinion. *See Vega v. Colvin*, No. 14cv1485-LAB (DHB), 2015 WL 7769663 (S.D. Cal. Nov. 12, 2015); *Olney v. Colvin*, No. 12-CV-0547-TOR, 2013 WL 4525402, at *4 (E.D. Wash. Aug. 27, 2013). Therefore, because Mr.

Longaker was an "other source" under 20 C.F.R. §§ 404.1513(d), 416.913(d), the

ALJ need only have provided germane reasons for rejecting Mr. Longaker's

findings. *See Molina,* 674 F.3d at 1111.

> b.      Inadequate Explanation

The ALJ found that Mr. Longaker provided little explanation for his "check-

box" ratings. Tr. 519-22, 646. A medical opinion may be rejected by the ALJ if it

is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v.*

*Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). However, if treatment notes are

consistent with the opinion, a conclusory opinion, such as a check-the-box form,

may not automatically be rejected. *Garrison v. Colvin*, 759 F.3d 995, 1014, n.17

(9th Cir. 2014); *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017)

("[T]here is no authority that a 'check-the-box' form is any less reliable than any

other type of form"). The ALJ noted Mr. Longaker reported in his treatment notes

that Plaintiff contributed to his own issues. Tr. 647; *see, e.g.,* Tr. 1568 (February

2016: Mr. Longaker's treatment notes indicate that Plaintiff continued to ignore his

own involvement in his behaviors and focused solely on others' responsibilities to

keep him from becoming angry); Tr. 1385 (September 2014: Mr. Longaker cited in

his treatment notes Plaintiff's alcohol use and its effects on his anger, stating that

he became unable to cope with anger when drinking excessively, "which appears

to be quite frequently"): Tr. 1568 (February 2016: Mr. Longaker reported in his

ORDER - 27

treatment notes that Plaintiff appeared to ignore his counseling).  In August 2017,

Plaintiff reported to Mr. Longaker that he wanted to continue his search for full-

time work and commented that his current job could transfer into a full-time job.

Tr. 1469.  A review of Mr. Longaker's treatment notes reveal that they are not

consistent with the numerous marked and severe limitations opined by Dr.

Longaker in his mental source statement.  Thus, the ALJ's finding that Mr.

Longaker provided little explanation for his check-box ratings was a germane

reason to discount Mr. Longaker's opinion.

### c.     Inconsistent with the Record as a Whole

The ALJ found Mr. Longaker's opinion was inconsistent with the

longitudinal record.  Tr. 646.  Relevant factors to evaluating any medical opinion

include the amount of relevant evidence that supports the opinion, the quality of

the explanation provided in the opinion, and the consistency of the medical opinion

with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir.

2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Mr. Longaker opined that

Plaintiff had two severe limitations and one marked limitation in categories

requiring concentration and persistence, four severe limitations in social

interaction, and one marked limitation in adaptation.  Tr. 514-15.  However, as

noted by the ALJ, the record showed that Mr. Longaker's marked and severe

ratings were inconsistent with Plaintiff's self-reported activity around the home,

his participation in the Special Olympics, and his ability to sustain substantial gainful activity for over a year during the relevant period. Tr. 639, 646. Plaintiff argues that the ALJ's reasoning only addressed one of Mr. Longaker's multiple ratings expressed on the check-box form, ECF No. 14 at 16 (citing Tr. 646), and the ALJ failed to show how Mr. Longaker's opinions in other functional areas were not supported by the longitudinal record. ECF No. 14 at 16. However, as discussed *supra*, the ALJ found that Plaintiff worked full-time as a security guard from November 2015 until January 2017. Tr. 634. The ALJ reasonably determined that this SGA-level work was inconsistent with Mr. Longaker's multiple marked and severe ratings. Tr. 646. While a different interpretation of the medical evidence could be made, the ALJ reasonably concluded that Mr. Longaker's assessment of marked and severe limitations was inconsistent with the record as a whole. This was a germane reason to discount Mr. Longaker's opinion.

### d. Impact of Alcohol Use

The ALJ discounted Mr. Longaker's opinion because he did not address the impact of Plaintiff's alcohol use on how he rated Plaintiff's functioning in the mental source statement. Tr. 646. While an ALJ may discount a medical opinion that does not consider a claimant's ongoing substance abuse, *Cothrell v. Berryhill*, 742 Fed. App'x 232, 236 (9th Cir. July 18, 2018) (unpublished opinion); *Chavez v. Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016)

(unpublished opinion), here, Mr. Longaker's mental source statement explicitly stated, "Please exclude from this assessment any limitations due to current alcohol or drug use," and "[t]he limitations noted do not include limitations from current alcohol or drug use." Tr. 514, 516. Defendant argues that the ALJ relied on Mr. Longaker's treatment notes, finding that they showed Plaintiff's excessive drinking appeared to contribute to his anger management issues. ECF No. 17 at 12-13 (citing Tr. 638, 647, 1385, 1558, 1568). However, the explicit language on the mental source statement form shows that Mr. Longaker assessed marked and severe functional limitations even without alcohol or drug use. Tr. 514, 516. The ALJ erred by discounting this opinion on the grounds that Mr. Longaker did not address in the mental source statement the impact of Plaintiff's alcohol use on how he rated Plaintiff's functioning. *See Brown-Hunter*, 806 F.3d at 492 (demanding that the ALJ set forth its reasoning in a way that allows for meaningful review); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1998). This is not a germane reason to discount Mr. Longaker's opinion. However, because the ALJ provided other germane reasons to discount Mr. Longaker's opinion, as discussed *supra*, the ALJ's error is harmless. *See Molina,* 674 F.3d at 1111.

4. *Dr. Zimmerman*

On June 11, 2018, Plaintiff's treating physician, Laurie Zimmerman, M.D., completed a mental source statement for Plaintiff. Tr. 1647-50. Dr. Zimmerman

reported that Plaintiff had an "explosive temper" and did not get along well with others. Tr. 1650. Dr. Zimmerman opined that Plaintiff was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, interact with others, and adapt or manage himself. Tr. 1647-49. She also opined that Plaintiff would be off-task over 30 percent of the time. Tr. 1649.

The ALJ gave Dr. Zimmerman's opinion little weight. Tr. 649. Because Dr. Zimmerman's opinion was contradicted by the nonexamining opinion of Dr. Lace, Tr. 668-84, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Zimmerman's opinion.[9] *Bayliss*, 427 F.3d at 1216.

a. Inadequate Explanation/Inconsistency with Treatment Notes

The ALJ found that Dr. Zimmerman provided a limited explanation for her opinion and there were inconsistencies with her treatment notes. Tr. 649. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately

_____

[9] Dr. Lace testified that, in terms of how Plaintiff presented, there was no support for marked or extreme limitations. Tr. 671.

ORDER - 31

supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected.  *Garrison*, 759 F.3d at 1014, n.17; *Trevizo*, 871 F.3d at 677 n.4 ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").  A physician's opinion may also be rejected if it is unsupported by treatment notes and findings.  *Bray*, 554 F.3d at 1228; *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

Here, while Dr. Zimmerman opined that Plaintiff had an "explosive temper" and did not get along well with others, she failed to provide objective reasons explaining why Plaintiff's mental impairments caused him to be markedly limited in eight functional areas.  Tr. 1647-50.  Despite opining that Plaintiff was markedly limited his ability to understand and remember detailed instructions, carryout detailed instructions, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, interact with others, and adapt and manage himself, Tr. 1647-49, the ALJ found that Plaintiff's reports to Dr. Zimmerman were "rather unremarkable."  Tr. 649; *see, e.g*., Tr. 1421 (October 2016: Plaintiff reported to Dr. Zimmerman that his mood had been good); Tr. 1409 (January 2018: Dr. Zimmerman noted that Plaintiff

had a euthymic mood and full affect). Dr. Zimmerman's mental status

examination revealed that she found Plaintiff had good eye contact, appropriate

affect, fair insight and judgment, and appeared to be of average intelligence. Tr.

1403-04. Dr. Zimmerman also found Plaintiff's recent and remote memory to be

grossly intact, and determined that Plaintiff was oriented to person, place, time,

and circumstance. Tr. 1403-04. While Dr. Zimmerman also noted that Plaintiff

had a depressed and irritable mood, she reported that there was no current suicidal

or homicidal ideation and he had not been treated for depression in the past. Tr.

1403. Substantial evidence supports the ALJ's finding that there were

inconsistencies between Dr. Zimmerman's opinion and her own treatment notes.

This was a specific and legitimate reason to discredit Dr. Zimmerman's opinion.

Due to the inconsistencies between her treatment notes and her opinion, the ALJ's

finding that Dr. Zimmerman provided little explanation for her check-box ratings

was also a specific and legitimate reason to discount her opinion.

       b.      Inconsistent with the Record as a Whole

The ALJ found Dr. Zimmerman's opinion was inconsistent with the

longitudinal record. Tr. 649. Relevant factors to evaluating any medical opinion

include the amount of relevant evidence that supports the opinion, the quality of

the explanation provided in the opinion, and the consistency of the medical opinion

with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.

Dr. Zimmerman opined that Plaintiff had eight marked limitations in categories requiring understanding and memory, sustained concentration and persistence, social interaction, and the ability to adapt or manage himself. Tr. 1647-49. However, as discussed *supra*, the record demonstrates that Dr. Zimmerman's marked ratings are inconsistent with the longitudinal record, as the ALJ noted Plaintiff's self-reported activity around the home and in the Special Olympics, his ability to sustain SGA-level work during the relevant period, and the inconsistency with the opinion of Dr. Lace, to whom the ALJ assigned great weight. Tr. 637, 639, 646, 649. Plaintiff argues that the opinions of Dr. Marks, Mr. Longaker, and Dr. Orr are all largely consistent with the conclusions found by Dr. Zimmerman. ECF No. 14 at 18-19. While a different interpretation of the medical evidence could be made, the ALJ's interpretation of the longitudinal record—that Dr. Zimmerman's opinion was inconsistent with the record as a whole—is a rational interpretation supported by substantial evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (recognizing that when the evidence in the record is subject to more than one rational interpretation, the court defers to the ALJ's finding). This was a specific and legitimate reason to discount Dr. Zimmerman's opinion.

*5. Dr. Marks*

Examining psychologist N.K. Marks, Ph.D. conducted a psychological evaluation of Plaintiff for the Department of Social and Health Services (DSHS). Tr. 1325-1331. Dr. Marks diagnosed Plaintiff with antisocial personality disorder, major depressive disorder, generalized anxiety disorder, cannabis use disorder, alcohol use disorder "in self-stated remission," and amphetamine-type substance use disorder "in self-stated remission." Tr. 1328. Plaintiff reported that he used marijuana daily and was "high" the morning of the evaluation. Tr. 1326-27. Dr. Marks noted that Plaintiff's "[o]verall problem solving and judgment appear[ed] to be intact," but that "background history suggest[ed] that in actual life situations, judgment is poor and problem solving is weak." Tr. 1331. Dr. Marks opined that Plaintiff 1) was severely limited in the ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and set realistic goals and plan independently; and 2) was markedly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, perform routine tasks without special supervision, adapt to changes in a routine work setting, make simple work-related decisions, ask simple questions or request assistance, and

complete a normal work day and work week without interruptions from

psychologically based symptoms.  Tr. 1328.

The ALJ gave Dr. Marks' opinion little weight.  Tr. 647-48.  Because Dr.

Marks' opinion was contradicted by the nonexamining opinion of Dr. Lace, Tr.

668-84, the ALJ was required to provide specific and legitimate reasons for

discounting Dr. Marks' opinion.[10]  *Bayliss*, 427 F.3d at 1216.

a.    Based on State Agency Rules

The ALJ assigned little weight to Dr. Marks' opinion because she conducted

her evaluation using regulations for DSHS that differ from those under the Social

Security Administration.  Tr. 647-48.  The regulations provide that the amount of

an acceptable source's knowledge of Social Security disability programs and their

evidentiary requirements may be considered in evaluating an opinion, regardless of

the source of that understanding.  20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  The

regulations also require that every medical opinion will be evaluated, regardless of

its source.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Although state agency disability

rules may differ from Social Security rules regarding disability, it is not always

---

[10] Dr. Lace testified that, in terms of how Plaintiff presented, there was no support

for marked or extreme limitations.  Tr. 671.

ORDER - 36

apparent that the differences in rules affect a particular physician's report without further analysis by the ALJ. Here, the DSHS form defines marked as "a very significant limitation on the ability to perform one or more basic work activit[ies]." Tr. 1328. As noted in *Steinmetz v. Colvin*, 2016 WL 697141 at *5 (E.D. Wa., Feb. 19, 2016), further analysis by an ALJ may be needed where a DSHS form does not define terms. Here, the terms are defined. This was not a specific and legitimate reason to discount Dr. Marks' opinion.

       b.     Inadequate Explanation/Internal Inconsistencies/Self-Reports

The ALJ asserted that Dr. Marks provided little explanation for her opinion, her ratings were "somewhat inconsistent" with her own findings, and therefore her opinion appeared to be based on subjective rather than objective evidence. Tr. 647-48, 1325-31. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Further, a physician's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

ORDER - 37

602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Some reliance on self-reports is appropriate, as psychiatric diagnoses "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Here, the ALJ failed to support the assertion that Dr. Marks' opinion was inconsistent with her findings and thus likely based more heavily on Plaintiff's self-reports. Dr. Marks' mental status examination showed that Plaintiff was poorly groomed, anxious and confused, and he exhibited poorly organized speech and minimal eye contact. Tr. 1329. The mental status examination results for Plaintiff's thought process and content, orientation, perception, and memory were all within normal limits. Tr. 1330. However, the results for Plaintiff's fund of knowledge and concentration were not within normal limits. Tr. 1330. The ALJ failed to provide any explanation for his conclusion that Dr. Marks' opinion was inconsistent with her findings. This was not a specific and legitimate reason to discount her opinion.

### c. Inconsistent with Dr. Lace's Opinion

Finally, the ALJ relied on the opinion of testifying psychologist Dr. Lace as another reason to assign less weight to Dr. Marks' opinion. Tr. 648-49. Generally, an ALJ should accord more weight to the opinion of an examining physician than to that of a nonexamining physician. *See Andrews*, 53 F.3d at 1040–41. However, the opinion of a nonexamining physician may serve as substantial evidence if it is "supported by other evidence in the record and [is] consistent with it." *Id*. at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion

which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Here, Dr. Lace reviewed the record and disagreed with Dr. Marks' opinion that Plaintiff had any marked limitations in functioning. Tr. 649, 671. The ALJ credited Dr. Lace's opinion that Dr. Marks' ratings were more severe than what the record supported. Tr. 648. The ALJ found that Dr. Lace had the opportunity to review all of the evidence of record, except for Dr. Zimmerman's medical source statement, Dr. Lace reviewed more evidence than any other treating or examining psychologist, he was familiar with Social Security regulations, and he provided thorough and persuasive testimony regarding his opinions. Tr. 649. However, as discussed *supra*, the ALJ failed to provide any legally sufficient reasons to reject the opinion of Dr. Marks independent of Dr. Lace's opinion. Because this case is remanded on other grounds, the Court declines to engage in harmless error analysis here.

**C.    Step Three**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet Listing 12.05. ECF No. 14 at 5-8. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to

prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525, 416.925. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. 20 C.F.R. §§ 404.1525(d), 416.925(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The claimant bears the burden of establishing he meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The ALJ must receive into evidence during the administrative hearing the opinion of the testifying medical examiner on the issue of Listing equivalence and give appropriate weight to that opinion. SSR 96-6p (eff. July 2, 1996, to March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listings 12.04, 12.05, 12.06, 12.08, and 12.11. Tr. 637. On January 17, 2017, new 12.00 listings took effect. The Social Security Administration has directed that if a court reversed a decision and remanded the case for further administrative proceedings after January 17, 2017, SSA would apply the current mental disorder rules to the entire period at issue in the decision made after the court's remand. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66160–62 (Sept. 26, 2016); *see also* Tr. 641. Because the Court remanded this case after January 17,

2017, the ALJ applied the current mental listings to the entire period at issue in this decision. Tr. 641.

On remand, this Court directed the ALJ to make a new determination as to whether Plaintiff met or medically equaled listing 12.05C, which does not exist in the current listings. Tr. 641. Under the prior listings, three criteria were required to satisfy Listing 12.05: a valid verbal, performance, or full-scale IQ of 60 through 70; a physical or other mental impairment imposing additional and significant work-related limitation of function; and subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22. Tr. 641. This Court determined that the prior ALJ made no finding on the latter criterion. Tr. 641. The second ALJ determined that the most analogous criteria in the current listings are 12.05A3 and 12.05B3. Tr. 641.

Listing 12.05 describes symptoms a claimant must establish to be considered intellectually disabled. Listing 12.05 now requires satisfaction of an "A" *or* "B" criteria. ECF No. 17 at 17 (citing 20 C.F.R. Subpt. P, App. 1 §§ 12.00C (describing § 12.05 criteria); 12.05). The ALJ separately addressed Listing 12.05A and 12.05B. Tr. 641-43.

*1. Listing 12.05A*

Listing 12.05A is met when the claimant can demonstrate:

(1) Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

(2) Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

(3) The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began before your attainment of age 22.

20 C.F.R. Subpt. P, App. 1 §12.05(A)(1-3) (2017).

The ALJ determined that Plaintiff did not meet the requirements of Listing 12.05A. Tr. 642. First, he determined Plaintiff was able to participate in standardized testing of intellectual functioning, and his test scores did not show "significantly subaverage" functioning, as Dr. Orr only diagnosed Plaintiff with borderline intellectual functioning. Tr. 641. Next, the ALJ found Plaintiff failed to demonstrate that he depends on others for his personal needs, as Plaintiff reported that he had no problems performing personal care. Tr. 641 (citing Tr. 250). Finally, the ALJ found that the evidence of record failed to support the conclusion that Plaintiff's borderline intellectual functioning began before he reached age 22. Tr. 641. The ALJ noted that the earliest objective finding of Plaintiff's intellectual deficits in the record was from November 2012, when Plaintiff was 49 years old. Tr. 641-42. The ALJ found the only evidence of earlier intellectual dysfunction

was a high school grade report from 1978 to 1981, showing that Plaintiff's grade point average was below 2.0. Tr. 642 (citing Tr. 305). The ALJ determined that this one grade report was insufficient to prove the existence of adaptive and intellectual deficits before age 22. Tr. 645. Further, Dr. Lace testified that Plaintiff's current challenges likely would have been present in high school, but he also noted that Plaintiff's low grades in high school could be explained by reasons other than intellectual dysfunction. Tr. 680. The ALJ also noted that Plaintiff reported he was in special education from fifth grade until he dropped out of school in eleventh grade, but the ALJ determined that Plaintiff's statements to an examiner 20 years later were insufficient to prove adaptive deficits before age 22. Tr. 645. The academic record documents Plaintiff's classes and corresponding grades, but does not document special education services, any assessment of developmental disability, or any attribution of Plaintiff's poor academic performance to intellectual disability. Tr. 305. Further, the ALJ noted that Plaintiff was able to successfully obtain his GED after dropping out of school and was able to work SGA-level jobs both before and during the relevant period. Tr. 645. In contrast, Plaintiff cites Dr. Lace's testimony that his experience showed it was possible, and probably even likely, that Plaintiff's adaptive functioning challenges would have been present in high school. ECF No. 14 at 6 (citing Tr. 681, 683). However, the question for this Court is whether substantial evidence

ORDER - 44

supports the ALJ's finding. *Hill*, 698 F.3d at 1158. The Court finds that it does. The evidence offered by Plaintiff showing low academic achievement does not undermine the ALJ's conclusion. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600; *see also Sprague*, 812 F.2d at 1229-30.

### 2. Listing 12.05B

Listing 12.05B is met when the claimant can demonstrate:

(1) Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

(2) Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information; or

    b. Interact with others; or

    c. Concentrate, persist, or maintain pace; or

    d. Adapt or manage oneself; and

(3) The evidence that the claimant's current intellectual and adaptive functioning and about the history of the claimant's disorder demonstrates or supports the conclusion that the disorder began prior to age 22.

20 C.F.R. Subpt. P, App. 1 §12.05(B)(1-3) (2017).

The ALJ determined that Plaintiff did not meet the requirements of Listing 12.05B. Tr. 643. While the ALJ acknowledged that Plaintiff had a full-scale IQ score between 71 and 75 with a score of 70 on his verbal comprehension index, as discussed *supra*, the ALJ found the evidence of record failed to support the conclusion that Plaintiff's borderline intellectual functioning began before age 22. Tr. 643. The ALJ also determined that Plaintiff did not have an extreme limitation of one, or marked limitation of two, of the identified areas of mental functioning. Tr. 643. Instead, he found that Plaintiff had only moderate limitations in understanding, remembering, or applying information, Tr. 637, concentrating, persisting, or maintaining pace, Tr. 639, and adapting or managing himself, Tr. 640. The ALJ determined that Plaintiff had a moderate-marked limitation in the ability to interact with others. Tr. 638. These findings do not satisfy the requirements of Listing 12.05B.

Plaintiff asserts that Dr. Zimmerman's impairment ratings should have compelled the ALJ to find that Plaintiff met the requirements of Listing 12.05B. ECF No. 14 at 6 (citing Tr. 1649). Dr. Zimmerman opined that Plaintiff had marked limitations in the ability to interact with others and to adapt or manage

himself.  Tr. 1649.  Plaintiff's argument rests of the assumption that the ALJ erred in discrediting Dr. Zimmerman's opinion.  However, as discussed *supra*, the ALJ provided specific and legitimate reasons to discount Dr. Zimmerman's opinion. Moreover, Dr. Lace testified that Plaintiff was moderately limited in his ability to interact with others to adapt or manage himself.  Tr.673.  The ALJ assigned great weight to the opinion of Dr. Lace, who testified at the hearing, was available for cross-examination, and the ALJ found substantial evidence in the record supported his opinion.  Tr. 649.  The ALJ reasonably relied on Dr. Lace's testimony and other evidence in the record to discredit Dr. Zimmerman's ratings.  Plaintiff does not establish that his impairment met or medically equaled the severity of Listing 12.05B.

Plaintiff contends that the ALJ ambiguously found that Plaintiff had a "moderate-marked" limitation in interacting with others.  ECF No. 14 at 6 (citing Tr. 638-39).  Any error in not assigning a clear limitation to Plaintiff's ability to interact with others is harmless error, as Listing 12.05B requires a claimant to have an extreme limitation of one, or marked limitation of two, of the specified areas of mental functioning.  20 C.F.R. § 404, Appendix 1 to Subpt. P.  The ALJ found that Plaintiff was moderately limited in three of the four areas.  Because Plaintiff's mental impairments do not cause at least two marked limitations or one extreme

limitation, Plaintiff has not met his burden to establish that he satisfied the requirements of Listing 12.05B.

### 3. Listing 12.05C

On remand, this Court directed the ALJ to make a new determination as to whether Plaintiff met or medically equaled Listing 12.05C, which has been rescinded under the new regulations. Tr. 641. Under the prior listings, a claimant had to establish the following three prongs to prove he met Listing 12.05C: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 through 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation. *Kennedy v. Colvin*, 738 F.3d 1172, 1175-76 (9th Cir. 2013). This Court determined that the prior ALJ made no finding on the issue of whether or not Plaintiff was able to establish the existence of subaverage general intellectual functioning prior to age 22. Tr. 641. In his decision after this case was remanded, the ALJ determined that the most analogous criteria in the current listings are 12.05A3 and 12.05B3. Tr. 641. As discussed *supra*, Plaintiff has failed to satisfy his burden to show that he meets or equals Listing 12.05A or 12.05B.

Although Listings 12.04, 12.06, 12.08, and 12.11 continue the "paragraph C" criteria under the current regulations, Plaintiff does not challenge the ALJ's analysis of other mental health listings with any specificity, and thus waives any

argument as to listings other than Listing 12.05.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

### D.    Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims.  ECF No. 14 at 8-12.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 644.

### 1. Inconsistent with Objective Medical Evidence

The ALJ found the severity of Plaintiff's symptom complaints was unsupported by the objective medical evidence.  Tr. 644-45.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011).  Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor. *Burch*, 400 F.3d at 680.

The ALJ noted that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the objective medical

evidence. Tr. 644. However, the ALJ failed to identify what in Plaintiff's symptom testimony and reports was inconsistent with the evidence or to explain how the evidence was inconsistent. Rather, the ALJ merely summarized Plaintiff's reported symptoms, Tr. 643-44, and summarized the medical evidence, Tr. 644-50. The ALJ's reasoning is unclear and the ALJ failed to sufficiently explain why the claims were discredited. *Thomas*, 278 F.3d at 958. This reason is not supported by substantial evidence.

### 2. Noncompliance with Treatment

The ALJ found Plaintiff's symptom reporting was undermined by his noncompliance with treatment. Tr. 644. It is well-established that unexplained or inadequately explained noncompliance with treatment reflects on a claimant's credibility. *See Molina*, 674 F.3d at 1113-14; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility). Here, the ALJ found that the evidence showed Plaintiff delayed taking anger management classes and he testified at the hearing that he would not have the same anger issues today if he were working because he had worked on anger management with his therapist. Tr. 644 (citing Tr. 1305). The ALJ also found that Plaintiff's apparent intermittent compliance with prescription

medication detracted from his alleged inability to control his anger.  Tr. 644.  The ALJ relied on this evidence to conclude that Plaintiff's mental impairments were not as severe as alleged.  Tr. 644.

Although the record does demonstrate that Plaintiff had been out of his medication before picking up refills on more than one occasion and that he had a gap in counseling attendance, the evidence also indicates that other factors, such as homelessness, contributed to Plaintiff's noncompliance.  *See* Tr. 1413 (September 11, 2017: Plaintiff had been out of his medication for a week, but at the same appointment he told his treating physician that his wife was in the hospital due to an overdose, he had slept in the park for a week, and was staying with a friend who was giving him rides to see his mother in a rehab facility due to a stroke); *see also* Tr. 1456 (January 9, 2018: Plaintiff reported to treating therapist that although he had not presented for a therapy appointment since September 2017, he had been "homeless for the entire duration of his absence"); *see also* Tr. 1409 (January 22, 2018: Plaintiff's treating physician noted that Plaintiff should have been out of medication toward the end of the prior month, however this visit was less than two weeks after Plaintiff reported to his therapist that he had recently been homeless). The ALJ is required to consider Plaintiff's reasons for noncompliance.  Here, the ALJ's discussion of Plaintiff's noncompliance did not consider whether Plaintiff's

noncompliance was sufficiently explained.  Tr. 644; *see Molina*, 674 F.3d at 1113-14.  This reason is not supported by substantial evidence.

### 3. Inconsistent with Plaintiff's Employment Activities

The ALJ discounted Plaintiff's reports that his symptoms were disabling because such allegations were inconsistent with Plaintiff's employment activity during the relevant period.  Tr. 644, 647.  An ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  Working with an impairment supports a conclusion that the impairment is not disabling.  *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Bray*, 554 F.3d at 1227 (seeking work despite impairment supports inference that impairment is not disabling).  Here, the ALJ found that Plaintiff was able to maintain employment for over a year during the relevant period.  Tr. 644.  The ALJ noted that Plaintiff told his treating physician he lost his job due to an anger outburst, but he also denied the accusation.  Tr. 647 (citing Tr. 1305).  Plaintiff contends that most of his work was not substantial gainful activity, but as discussed *supra*, the ALJ relied on Plaintiff's testimony that he worked full-time from November 2015 through January 2017, earning income above the SGA-level, in finding that Plaintiff did perform SGA-level work for over a year during the relevant period.  ECF No. 14 at 12.  The ALJ's conclusion—that Plaintiff's employment during the relevant time period was inconsistent with his reported disabling symptoms—is rational and

ORDER - 54

supported by substantial evidence.  *See Burch*, 400 F.3d at 679; *Hill*, 698 F.3d at 1158.  This was a clear and convincing reason to discount Plaintiff's reported disabling symptoms.

### 4. Childcare Activities

The ALJ discounted Plaintiff's symptom claims as inconsistent with babysitting for his toddler granddaughter.  Tr. 648.  A claimant's reported activities can be evaluated for consistency with reported symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; *Orn*, 495 F.3d at 639.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in . . . [activities that] contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13 (internal citations omitted).  The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain.  *Rollins*, 261 F.3d at 857.  For care activities to serve as a basis for the ALJ to discredit a claimant's symptom claims, the record must identify the nature, scope, and duration of the care involved, showing that the care is "hands on" rather than a "one-off" care activity.  *Trevizo*, 871 F.3d at 675-76.  Here, the ALJ noted that Plaintiff had his toddler granddaughter with him at an appointment with his treating physician in January 2018, and that Plaintiff reported to the same physician in April 2018 that he had "been doing a lot of babysitting."  Tr. 648 (citing Tr. 1405-09).  The ALJ

did not further detail these activities nor does the cited record provide any additional details. While care activities may rebut a claimant's symptom claims, the record lacks substantial evidence to support the ALJ's decision that Plaintiff's care-taking activities are inconsistent with his symptom claims. This reason is not supported by substantial evidence.

The Court has found that three of the four reasons identified by the ALJ for discounting Plaintiff's symptom complaints are not supported by substantial evidence. Given the fact that the Court is remanding this case on other grounds, the Court finds it unnecessary to engage in a harmless error analysis here.

## E.     Lay Opinion Evidence

Plaintiff challenges the ALJ's rejection of the lay statements of his wife, his daughter, his stepson, his friend, and his wife's friend. ECF No. 14 at 21. An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).

The ALJ considered the lay opinion evidence and determined that the statements were not entirely credible. Tr. 644-45. In discounting the lay witness

statements, the ALJ relied on the same reasons that he articulated in discounting

Plaintiff's symptom complaints.  The Court has found numerous errors in the

ALJ's analysis of Plaintiff's symptom complaints and the ALJ's analysis of the lay

witness statements suffers the same defects.  Given the fact that the Court is

remanding this case on other grounds, the Court finds it unnecessary to engage in a

harmless error analysis here.

**F.     RFC**

Plaintiff asserts that the ALJ's RFC was fundamentally flawed because it

contained contradictory limitations regarding the amount of supervision that

Plaintiff would require, and the maximum amount of supervision that he could

tolerate.  ECF No. 14 at 13-14; ECF No. 19 at 11.  "[T]he ALJ is responsible for

translating and incorporating clinical findings into a succinct RFC."  *Rounds v.*

*Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  To the extent the

evidence could be interpreted differently, it is the role of the ALJ to resolve

conflicts and ambiguity in the evidence.  *Morgan*, 169 F.3d at 599-600.  Plaintiff

argues that the ALJ's RCF included incompatible limitations, as the ALJ

determined that Plaintiff should not interact more than occasionally and

superficially with supervisors and coworkers, yet also found that Plaintiff would

require up to frequent supervision during the normal training period.  Tr. 643.

Plaintiff asserts that he would be unable to complete a training period without

exceeding his own RFC by interacting more than occasionally with his supervisors. ECF No. 14 at 14. Plaintiff's argument is without merit, as the ALJ specifically included in the RFC an exception to the occasional interaction requirement for the normal training period. Tr. 643 ("[Plaintiff] should have no…more than occasional, superficial contact with co-workers or supervisors, **except** that he would require up to frequent supervision during the normal training period to help him learn new tasks") (emphasis added). This issue was also addressed during the administrative hearing, when Plaintiff's counsel asked the vocational expert if the jobs she testified that Plaintiff could perform would still exist if he required frequent supervision for the training period and occasional supervision for the regular work period. Tr. 717. The vocational expert testified that those jobs would still exist under such circumstances. Tr. 717. It is the ALJ's responsibility to translate and incorporate clinical findings into a succinct RFC. *Rounds*, 807 F.3d at 1006. The ALJ did not err in this aspect of translating the clinical findings and formulating the RFC.

## G. Remedy

Plaintiff urges the Court to remand for an immediate award of benefits. ECF No. 19 at 11.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232

(citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the court reverses

an ALJ's decision for error, the court "ordinarily must remand to the agency for

further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017);

*Treichler*, 775 F.3d at 1099.  However, the Ninth Circuit has "stated or implied

that it would be an abuse of discretion for a district court not to remand for an

award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020.

Under the credit-as-true rule, where 1) the record has been fully developed and

further administrative proceedings would serve no useful purpose; 2) the ALJ has

failed to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and 3) if the improperly discredited evidence were

credited as true, the ALJ would be required to find the claimant disabled on

remand, the court will remand for an award of benefits.  *Revels v. Berryhill*, 874

F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied,

the court will not remand for immediate payment of benefits if "the record as a

whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759

F.3d at 1021.

> *1.  Completeness of the Record*

As to the first element, administrative proceedings are generally useful

where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020,

there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or

the "presentation of further evidence ... may well prove enlightening" in light of the passage of time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002). *Cf. Nguyen*, 100 F.3d at 1466–67 (remanding for ALJ to apply correct legal standard, to hear any additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill*, 12 F.3d at 918-19 (same); *Bunnell*, 947 F.2d at 348 (same). Here, the record has been fully developed and contains several years' worth of treatment records, including notes from treating and examining specialists, opinion evidence from treating and examining specialists, Plaintiff, and several of his friends and family members. Two administrative hearings have been held and medical experts have testified at both hearings after reviewing the longitudinal record. Further proceedings are not necessary.

### 2. ALJ Error

As discussed *supra*, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for rejecting Plaintiff's need for 25 percent more time than the average worker to adapt to changes in the work environment, which the ALJ found to be supported by Dr. Orr's opinion. Therefore, the second prong of the credit-as-true rule is met.

### 3. Crediting as True Demonstrates Disability

The third prong of the credit-as-true rule is satisfied because if Dr. Orr's opinion, as interpreted by the ALJ, was credited as true, the ALJ would be required

to find Plaintiff disabled. Specifically, the ALJ found that Dr. Orr's opinion supported a need for Plaintiff to have 25 percent more time than the average worker to adapt to changes in the work environment. Tr. 645. The vocational expert testified that an individual with that specific limitation would not be able to maintain competitive employment. Tr. 710-12. Therefore, if the ALJ had fully credited Dr. Orr's opinion, the ALJ would be required to find Plaintiff disabled.

### 4. Serious Doubt

Finally, the record does not leave serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1021. The ALJ assigned great weight to an examining psychologist who opined disabling limitations and improperly rejected the opinion of another examining psychologist who also opined disabling limitations. Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler*, 775 F.3d at 1100 (internal citations omitted). In *Vasquez*, the Ninth Circuit exercised its discretion and applied the "credit as true" doctrine because of the claimant's advanced age and "severe delay" of seven years in her application. *Vasquez*, 572 F.3d at 593-94. Here, the delay of nearly seven years from the date of the applications make it

appropriate for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

The Court therefore reverses and remands to the ALJ for the calculation and award of benefits.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. 1. The District Court Executive is directed to **substitute Andrew M. Saul as the Defendant and update the docket sheet**.

2. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

4. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED July 31, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 62